UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CHARLES GOULD,                                    CIVIL NO. 11-1982 (DWF/JSM)

      Plaintiff,

v.                                                         REPORT AND RECOMMENDATION

CITI MORTGAGE, INC., ET AL.,

      Defendants,

The above matter came on before the undersigned upon plaintiff's Motion for Leave to Amend Complaint [Docket No. 18]. Jesse H. Kibort, Esq. appeared on behalf of plaintiff; Kevin T. Dobie, Esq. appeared on behalf of defendant Citi Mortgage, Inc.; and Benjamin E. Gurstelle, Esq. appeared on behalf of defendants Mortgage Electronic Registration Systems, Inc. and PennyMac Loan Services, LLC.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).[1]

## I.   BACKGROUND

Plaintiff, Charles Gould ("Gould") alleged that he is the owner of a house and property located at XXXX Duck Lake Road, Eden Prairie, MN (the "Property"). See Complaint, ¶ 8 [Docket No. 1C]. On August 29, 2007, Gould refinanced the Property,

---

[1]   Generally, motions to amend the complaint are addressed by an order, rather than a report and recommendation to the presiding District Court Judge. However, in light of the pending motions to dismiss filed by defendants Citi Mortgage, PennyMac and MERS, Judge Donovan Frank determined that the motion to amend should be addressed in a report and recommendation which will then allow him to address at the same time all motions in his decision.

borrowing the sum of $360,000.00 as part of an Adjustable Rate Mortgage ("ARM").  Id., ¶ 9.  Foreclosure proceedings were initiated against the Property with a foreclosure sale that was scheduled for June 21, 2011. Id., ¶ 19.   Gould filed a Summons and Complaint, dated June 15, 2011 in Hennepin County District Court against Citi Mortgage, Inc. ("Citi Mortgage"), a Missouri corporation; Closers Finalis, Inc. ("Closers Finalis"), a Minnesota corporation; First Rate Financial, Inc. ("First Rate"), an inactive Minnesota corporation; Mortgage Electronic Registration Systems, Inc. ("MERS"), a Virginia corporation; and PennyMac Loan Services, LLC ("PennyMac"), a California corporation.  Id., ¶¶ 2-6.  Gould's Complaint lists twelve causes of action against all defendants: (1) Declaratory Relief; (2) Injunctive Relief; (3) Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.; (5) Real Estate Settlement Procedures Act ("RESPA"); (6) Rescission; (7) Fraud; (8) Unfair Business Practices; (9) Breach of Fiduciary Duty; (10) Predatory Lending; (11) Civil Conspiracy; and (12) Unjust Enrichment.  This action was removed by defendants to federal court on July 20, 2011, based on federal question jurisdiction.  See Docket Nos. 1, 1-9.

On July 27, 2011, defendants Citi Mortgage, MERS and PennyMac filed motions to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  See Docket Nos. 2, 5.[2]

On or about September 9, 2011, Gould retained the law firm of Daniels & Wymore, PLLC to represent him in this action.  On October 3, 2011, Gould filed the

---

[2]     The hearing for these motions was held on November 4, 2011, before United States District Judge Donovan W. Frank.

present Motion for Leave to Amend the Complaint.   The facts alleged in the Proposed Amended Complaint are as follows:

On or about August 29, 2007, Gould entered into a consumer credit transaction with Citi Mortgage that was originated and brokered through First Rate and closed by Closers Finalis.   See Affidavit of Jesse H. Kibort, Ex. 2 (Proposed Amended Complaint) [Docket No. 21-2], ¶ 10.   In exchange for the extension of the credit, Citi Mortgage obtained a security interest in the Property.   Id.   Citi Mortgage, First Rate and Closers Finalis prepared a cash-out refinance loan in the amount of $360,000 for Gould on the Property and as part of the transaction, Gould signed an ARM with Citi Mortgage, which is tied to the 1-year LIBOR index.   Id., ¶¶ 11,12.   As part of this transaction, Gould signed a Mortgage that provided Citi Mortgage with a secured interest in the Property. Id., ¶ 13.   The ARM was fixed at 8.375% for the first ten-year period with payments at $2,512.50, and after ten years the interest rate would adjust to a figure no higher than 13.75%, which could amount to an increase of $1,801.17 in payments per month.   Id., ¶ 14.   The Federal Truth in Lending disclosure failed to provide the worst case scenario as to possible future payments and only provided the best case scenario.   Id.   Citi Mortgage and First Rate created a situation where even a slight depreciation in the value of the collateral value would create an obligation greater than the value of the Property.   Id., ¶ 15.   Citi Mortgage, First Rate and Closers Finalis used a the 1-year LIBOR index for the Federal Truth in Lending disclosure from a period earlier than they should have, and by doing so, showed Gould a lower fully indexed interest rate and lower monthly payment schedule than the reality at the time of the closing.   Id., ¶ 16. Citi Mortgage, First Rate and Closers Finalis misled Gould and misrepresented the true

terms of the mortgage disclosure by failing to provide the worst-case scenario in the Federal Truth in Lending disclosure, and had Gould known this information, he would not have entered into this transaction. Id., ¶¶ 17,18.

Citi Mortgage paid First Rate a yield spread premium for tricking Gould into a higher interest rate of 8.375 %, when the average fixed rate on a 30-year mortgage was 6.57%, and the yield spread premium was not listed as part of the HUD-1 settlement statement as required by law. Id., ¶¶ 19-23.

While the loan was a stated income loan, as evidenced by the closing document titled "Borrower(s) Acknowledgement of Stated Income Amount Used to Qualify for Mortgage Product" prepared by Citi Mortgage, First Rate and Closers Finalis, as of August 1, 2007, Minnesota had passed an Anti-Predatory law that required income to be verified pursuant to Minn. Stat. § 58.13, subd. 24. Id., ¶ 24. The lender approved the loan based on stated income with no asset verification. Id., ¶ 32.

Gould's loan application was filled out inaccurately and incorrectly, the underwriting was flawed, there was no determination of Gould's ability to repay the loan and instead, defendants relied on the foreclosure value of the collateral. Id., ¶ 25.

First Rate and Citi Mortgage had a fiduciary duty to act with reasonable skill, in good faith and with fair dealing in connection with the transaction at issue, and had First Rate and Citi Mortgage complied with their fiduciary duty, not acted in bad faith and not misrepresented the terms of the loan, then Gould would not have entered into the loan and suffered harm. Id., ¶¶ 26-28. Gould reasonably relied on First Rate and Citi Mortgage to ensure that the transaction was legal and proper and that the loan was the best loan for his needs. Id., ¶ 34.

Upon information and belief, the Note and Mortgage were assigned, conveyed or sold numerous times.  Id., ¶¶ 35-39.   Upon information and belief, defendants securitized and sold the Mortgage into a mortgage pool with a "pooling and servicing agreement" in which the payments due on the Mortgage were sold to third party purchasers of mortgage backed securities.  Id., ¶¶ 41, 43.  The securitization of the mortgage loan separated the value from the original Note from the actual physical original Note and Mortgage, making the Note and Mortgage no longer enforceable negotiable instruments and therefore, none of the defendants have the ability to assert the right to enforce or foreclose on the Mortgage.  Id., ¶¶ 44-46, 59.  Defendants falsely claimed a mortgagee's interest despite the fact that none of the defendants are in possession of the original Note, are not authorized representatives acting on behalf of any holder in possession of the original Note and are not authorized representatives acting on behalf of any holder entitled to enforce the original Note. Id., ¶¶ 47-50.  Gould demanded that all defendants provide proof of ownership and evidence of the proper and unbroken chain of title to the original Note and Mortgage.  Id., ¶ 51.  None of the defendants have valid, clear, and legal title to the original Note, have paid value for the Note, hold the Note in good faith, or hold the original Note without notice of the claims or defenses to the enforcement of the original Note and are holders in due course of the Note.  Id., ¶¶ 52-58.

While on August 29, 2007, Gould executed the original Note and Mortgage in favor of Citi Mortgage, PennyMac now claims the legal right to foreclose on the property.  Id., ¶ 40.

In or around December 2009 or January 2010, Citi Mortgage or Penny Mac (or both) approved and placed Gould into a "Home Affordable Modification Program" and modified his mortgage, requiring that before the modification became permanent, Gould had to make six modified payments of $1448.  Id., ¶¶ 60, 61.  Gould authorized the modified payments and the payments for the six months were made.  Id., ¶¶ 62-65.  Despite this agreement, and the fact that the six payments were made, Citi Mortgage or PennyMac continued to move forward with collection and foreclosure of the Property, scheduled for September 20, 2011.  Id., ¶¶ 66, 68.

As part of the Proposed Amended Complaint, Gould withdrew the federal TILA and RESPA claims, the state claims of Unfair Businesses Practices and Predatory Lending, and made modifications to his claims seeking declaratory and injunctive relief, and claims of breach of implied covenant of good faith and fair dealing and breach of fiduciary duty.  Further, by this motion to amend, Gould seeks to add the following state claims: Count 3 – Breach of Contract Against Citi Mortgage and PennyMac; Count 5 – Violation of Minn. Stat. § 58.13 Against First Rate; Count 6 – Violation of Minn. Stat. § 58.04 Against First Rate; Count 7 – Breach of Contract—Improper Transfer of Mortgage Loan into Pool and/or Trust Against All Defendants; Count 8 – Violation of Minn. Stat. § 580 et seq. (specifically Minn. Stat. § 580.02) Against All Defendants; Count 9 – Violation of Minn. Stat. § 580 et seq. (specifically Minn. Stat. § 580.04) Against Defendants PennyMac and Citi Mortgage; Count 10 – Fraud – Intentional Misrepresentation Against First Rate and Citi Mortgage; Count 11; Fraud – Intentional Misrepresentation Against Citi Mortgage and PennyMac; Count 13 – Negligent Misrepresentation Against All Defendants; Count 14 – Constructive Misrepresentation

Against All Defendants; Count 17 – Quiet Title Against All Defendants; Count 18 – Slander of Title Against PennyMac and Citi Mortgage; Count 19 – Qui Tam Against All Defendants; and Count 20 – Promissory Estoppel Against All Defendants.

At the hearing, Gould's counsel indicated that neither Closers Finalis nor First Rate had been served with the Complaint, and that he intended to drop Closers Finalis from the suit.

Defendants Citi Mortgage, PennyMac and MERS (hereafter "defendants") oppose the amendment of the Complaint on grounds that the new claims set out in the Proposed Amended Complaint are futile.[3]

On November 2, 2011, PennyMac and MERS, with Citi Mortgage's consent, filed an Amended Notice of Removal alleging diversity of citizenship, in addition to federal question and supplemental jurisdiction.  See Docket No. 32.  In support of removal based on diversity of jurisdiction, PennyMac and MERS alleged that Minnesota defendants Closers Finalis and First Rate were fraudulently joined.  Id., ¶¶ 7-11.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."  The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court.  See, e.g., Niagara of Wisconsin Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted).  The Eighth Circuit has held that "[a]lthough amendment of a complaint should be allowed liberally to ensure that a case is decided

---

[3]   As neither First Rate nor Finalis have appeared in this action, they did not respond to the motion to amend.

on its merits, . . . there is no absolute right to amend." Ferguson v. Cape Girardeau County, 88 F.3d 647, 650-1 (8th Cir. 1996) (citing Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989); Chesnut v. St. Louis County, 656 F.2d 343, 349 (8th Cir. 1981)). Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

In this case, where defendants have alleged that Gould's proposed amendments are futile, this Court has confined its analysis to determining whether the proposed claims state a claim for relief at this stage of the case. See Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.) (citation and marks omitted); In re Senior Cottages of Am., LLC, 482 F.3d 997, 1001 (8th Cir. 2007) (To deny a motion to amend on the ground of futility "means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion."); United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001) ("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim. . . ."), cert. denied, 536 U.S. 925 (2002).

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659,

665 (8th Cir. 2009).  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."  Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles recently articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  "Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the Twombly pleading standard. . . ."  Zutz, 601 F.3d at 850-51

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement does not require detailed factual allegations.  Martin v. ReliaStar Life Ins. Co., Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877 at *8 (D. Minn. 2010) (citing Twombly, 550 U.S. at 555).  On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S., at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss.  But this does not mean that only the complaint itself may be reviewed.

> "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The court, however, "may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).

Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008).

In summary, the pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct. at 1949 (internal quotation marks and citations omitted).  In making this determination, the Court must read the allegations of the proposed amended complaint as a whole, as opposed to parsing the allegations "piece by piece to determine whether each allegation, in isolation, is plausible."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations omitted).

III.    **ANALYSIS**

    A.    <u>**This Court Has Subject Matter Jurisdiction Over the Case to Resolve Gould's Motion to Amend the Complaint**</u>

As state previously, Gould commenced a suit in state court alleging state and federal claims against Citi Mortgage, PennyMac, MERS and two state defendants, Closers Finalis and First Rate.  Citi Mortgage and MERS removed the case to federal court based on federal question jurisdiction, PennyMac consented to the removal and now Citi Mortgage, MERS and PennyMac have brought a motion to dismiss his Complaint.  On October 13, 2011, presumably to defeat defendants' efforts to dismiss his suit against them, Gould moved to amend his Complaint to drop the federal claims, augment his state claims and add new state claims.  To address the possibility that if the motion to amend the Complaint were granted, this Court would lose original jurisdiction over the case based on federal question, Gould proposed that the Court maintain supplemental jurisdiction over his remaining state claims, or instead, decline to exercise supplemental jurisdiction and remand the case back to state court.  Plaintiff's Motion for Leave to Amend Complaint ("Pl. Mem.") [Docket No. 20], p. 4 n. 2.

In PennyMac's and MERS opposition memorandum and at the hearing, they acknowledged that the Proposed Amended Complaint removed the federal claims from the Complaint and that without the federal claims, the case in its current posture – with the existing and proposed new state claims – could be remanded back to state court without a ruling on the motion to amend the Complaint or a decision on their motion to dismiss the original Complaint.  <u>See</u> Defendants' PennyMac Loan Services, LLC and MERS's Memorandum in Opposition to Plaintiff's Motion to Amend Complaint ("PennyMac/MERS Mem.") [Docket No. 24], p. 3 n. 5.  Nevertheless, PennyMac and

MERS maintained that the posture of the case as it currently stands is that there is jurisdiction based on federal question, and consequently, this Court should address the proposed amendments based on supplemental jurisdiction, or alternatively, based on diversity of jurisdiction, claiming that Closers Finalis and First Rate had been fraudulently joined. At the hearing, the Court raised the issue of whether diversity of citizenship could be raised at this time (i.e., was it timely)[4] as a basis for subject matter jurisdiction, when it had not been raised at the initial time of removal by defendants. The parties briefed the issue after the hearing at the direction of the Court. See Docket Nos. 30, 31, 33. Subsequent to the hearing on the motion to amend, PennyMac and MERS, with Citi Mortgage's consent, filed an Amended Notice of Removal alleging diversity of citizenship based on fraudulent joinder of First Rate and Closers Finalis, in addition to federal question and supplemental jurisdiction. See Docket No. 32 (Amended Notice of Removal).

Removal is governed by 28 U.S.C. § 1446(b) which provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, <u>a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of</u>

---

[4] Jurisdiction based on diversity was raised for the first time in a footnote in PennyMac's and MERS's responsive memorandum and in their reply to their motion to dismiss. See PennyMac/MERS Mem., p. 3 n. 5; Defendants' PennyMac Loan Services, LLC and MERS's Reply Memorandum in Support of Motion to Dismiss [Docket No. 28], p. 4 n. 2.

>_an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable_, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (emphasis added).

Under § 1446(b), a defendant is generally barred from asserting any ground for removal not attempted within the thirty-day period afforded by the statute.  See Dahl v. R.J. Reynolds Tobacco, Inc., 478 F.3d 965, 968 (8th Cir. 2007).  "Congress created one exception for situations where the case was not removable as originally filed, but the defendant has later received the type of document described in § 1446(b) making removability first ascertainable."  Id.  In such a scenario, the thirty-day period starts again upon the receipt of the document, including an amended pleading.  Id. at 968-69; see also Lindsey v. Dillard's, Inc., 306 F.3d 596, 600 (8th Cir. 2002) ("Dillard's had thirty days from the establishment of the prerequisites of complete diversity jurisdiction to remove this case. That removal had to be done within one year from the commencement of the case ….").

This Court is satisfied that at the time it heard Gould's motion to amend the Complaint, there was federal question jurisdiction, and so it has the requisite authority to address the viability or futility of the state claims now.  Further, even if there was no federal question jurisdiction because of Gould's decision to drop the federal claims, PennyMac, MERS and Citi Mortgage have timely raised diversity of citizenship as a basis for the case being in federal court.  The Court reaches this conclusion because at the time the suit was begun, while these defendants were aware that First Rate was dissolved and out of business, as set forth in Paragraph 11 of the Notice of Removal

[Docket No. 1], they did not know that no claims were being asserted against Closers Finalis until they saw the Proposed Amended Complaint on October 13, 2011, and they did not know until the hearing that First Rate and Closers Finalis had not yet been served with the Complaint and that Gould's attorney intended to drop Closers Finalis from the suit.  In other words, PennyMac, MERS and Citi Mortgage had no basis to assert diversity of citizenship based on fraudulent joinder of the two state defendants, until they learned about that Gould was not pursuing Closers Finalis.[5]

Whether ultimately PennyMac, MERS and Citi Mortgage can establish diversity jurisdiction by showing that First Rate was fraudulently joined is not before this Court. That issue will only need to be resolved in the event that Gould's case survives their motions to dismiss, and Gould pursues a motion for remand.  For now, this Court is satisfied that the case is properly before it to consider the substance of the Proposed Amended Complaint.

### B. Proposed Loan Modification Claims: Breach of Contract (Count 3), and Promissory Estoppel (Count 20)

Gould alleged in Count 3 that Citi Mortgage and PennyMac breached the contract by failing to place him into a "Home Affordable Modification Program." Proposed Amended Complaint, ¶¶ 81-87.  Similarly, in the promissory estoppel claim alleged in Count 20, Gould asserted that all defendants promised to honor the modification agreement and cease all collection and foreclosure proceedings, and despite these promises, they moved forward with the foreclosure of the property.  Id., ¶¶ 226-231.

---

[5]    PennyMac and MERS may have had a basis to assert fraudulent joinder of First Rate when they first removed the case, but that would not have been sufficient to claim diversity of citizenship with the claims against Closers Finalis still alive and well.

Citi Mortgage, PennyMac and MERS argued that these claims are governed by Minn. Stat. § 513.33 subd. 2, and accordingly, must fail as Gould did not allege a writing signed by both parties setting forth the relevant terms of the purported new agreement. See Memorandum of Law in Response to Plaintiff's Motion to Amend the Complaint ("Citi Mortgage Mem."), pp. 15-17; PennyMac/MERS Mem., pp. 23-26.[6]

The relevant language in Minn. Stat. § 513.33 provides:

> Credit agreements to be in writing. <u>A debtor may not maintain an action on a credit agreement unless the agreement is in writing</u>, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

Minn. Stat. § 513.33 subd. 2 (emphasis added).  Minnesota courts have concluded that an agreement to lower a payment or change the interest rate on a mortgage constitutes a credit agreement for the purposes of § 513.33:

> An oral agreement to lower the interest rate on [a] loan balance . . . is clearly a credit agreement within the definition of Minn. Stat. § 513.33. Under such an agreement, the bank would be waiving a claim to the monetary value of the higher interest rate over the term of the loan. This is essentially an agreement to forbear repayment of money and clearly constitutes a financial accommodation. An oral agreement to change the interest rate charged on a loan goes to the essence of the financial relationship between the parties.

Carlson v. Estes, 458 N.W.2d 123, 128 (Minn. Ct. App. 1990); see also Myrlie v. Countrywide Bank, 775 F. Supp.2d 1100, 1109 (D. Minn. 2011) ("a loan modification agreement would constitute a credit agreement and maintaining an action based upon a loan modification agreement is barred by Minn. Stat. § 513.33, subd. 3(a)(3), unless the

---

[6]     CitiMortgage, PennyMac and MERS also argued that Gould's unjust enrichment claim (Count 16) fails for the same reason.  However, that claim was asserted in the original Complaint (Count 12) and is not the subject of Gould's motion to amend.  The viability of that cause of action is the subject of defendants' motions to dismiss.

loan modification agreement is in writing, expresses consideration, and sets forth relevant terms and conditions, and is signed.").

Gould asserted in his Proposed Amended Complaint that Citi Mortgage and PennyMac made multiple promises to him, including oral and written promises. However, he has not alleged that the agreement to place him into a Home Affordable Modification Program or to modify his loan was in writing, and as such, pursuant to Minn. Stat. § 513.33 subd. 2, he cannot maintain an action based on these purported promises.   Therefore, the Court finds that the motion to amend as it relates to the breach of contract claim (Count 3) and the promissory estoppel (Count 20) claim should be denied as they are futile.

### C.     Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing (Count 4)[7]

In Count 4 of the Proposed Amended Complaint Gould alleged that every contract imposes an implied duty of good faith and fair dealing, and that defendants breached this duty by withholding disclosures, willfully withholding notices in regards to excessive fees and closing costs, using below standard underwriting standards, violating the Minn. Stat. § 58.13, subd. 24 governing anti-predatory lending by placing him in a loan far below the quality for which he qualified, and by refusing to honor the agreement to permanently modify the mortgage.  Id., ¶¶ 88, 89, 94.

Citi Mortgage argued that the claims for breach of contract and breach of the implied covenant of good faith and fair dealing are futile because Gould has not alleged

---

[7]      Gould had alleged a claim for breach of contract and breach of implied covenant of good faith and fair dealing in Count 4 of the original Complaint.  However, as he is seeking permission to add language related to the loan modification agreement and to state additional facts to support the claim, this Court addresses this cause of action as part of the motion to amend.

an actual breach by it to the mortgage contract in question, but rather is asserting that the terms within the contract are unfair.  See Citi Mortgage Mem., pp. 13-14 (citing Weller v. Accredited Home Lenders, Inc., NO. CIV. 08-2798 (JRT/SRN), 2009 WL 928522 (D. Minn. March 31, 2009)).  PennyMac and MERS contended that these claims fail because they did not originate the loans.  See PennyMac/MERS Mem., pp. 5-6.[8]

Pursuant to Minnesota law, a breach of contract claim has four elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages."  Parkhill v. Minn. Mutual Life Ins. Co., 174 F. Supp.2d 951, 961 (D. Minn. 2000) (citing Briggs Trans. Co. v. Ranzenberger, 299 Minn. 127, 217 N.W.2d 198, 200 (1970); Boatwright Construction, Inc. v. Kemrich Knolls, 306 Minn. 519, 238 N.W.2d 606, 607 (1976) (breach must be material)) (citation omitted), aff'd by 286 F.3d 1051 (8th Cir. 2002).  In this case, Gould alleged that defendants breached the contract because they made various errors during the formation of the contact.  By the very terms of this claim, Gould has not alleged any facts to support a claim against PennyMac or MERS, neither of which any role in the origination of the loan.  Moreover, fatal to his claim for breach of contract against Citi Mortgage, PennyMac and MERS is the lack of any assertion by Gould that he performed any conditions precedent and how defendants breached the mortgage contract once it had been executed by the parties.

As for Gould's claim for breach of contract based on defendants' failure to abide by the modification agreement, for the reasons stated forth as to Count 3 of the Proposed Amended Complaint, this claim fails, as there is no allegation that the alleged

---

[8]     MERS and PennyMac did not address in their brief the proposed allegations that bore on the loan modification.

modification was in writing as required by to Minn. Stat. § 513.33 subd. 2.  Therefore, this Court finds that Gould has failed to state a viable claim for breach of contract under Count 4.

"Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract."  In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995) (citations omitted).  The implied covenant, however, "does not extend to actions beyond the scope of the underlying contract."  Id. at 503. Moreover, "Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim."  Medtronic, Inc. v. ConvaCare, Inc., 17 F.3d 252, 256 (8th Cir. 1994) (citations omitted); see also Orthomet, Inc. v. A.B. Medical, Inc., 990 F.2d 387, 392 (8th Cir. 1993) (finding that pursuant to Minnesota law, a cause of action for good faith and fair dealing "cannot exist independent of the underlying breach of contract claim.").

Gould has not asserted that defendants engaged in conduct meant to keep him from meeting the terms of the Note or Mortgage once they were formed.  Instead, his implied covenant of good faith and fair dealing claim focuses on why the loan, its terms and its formation were unfair to him given defendants' alleged actions.  Stated otherwise, Gould has not alleged that defendants kept him from performing on the contract.

For all of the reasons stated above, Gould's motion to amend as it relates to Count 4 should be denied.

**D.**     **Quiet Title Claims: Pooling (Count 7); Minnesota Statutes § 580.02 .
(Count 8); Minnesota Statutes § 580.04 (Count 9); Quiet Title (Count
17); Slander of Title (Count 18); and Qui Tam (Count 19)**

Count 7 alleges that Gould is entitled to learn the identity of the holder in due
course of the Note.  See Proposed Amended Complaint, ¶ 117.  According to Gould,
each time the Note and Mortgage were transferred or sold, Minn. Stat. § 580.02
required that the transaction be recorded.  Id., ¶¶ 118, 119.  To the extent the Note
ended up in a trust or mortgage pool, Gould claimed it made it impossible for him to
identify the actual "Note Holder" of his obligation, which he alleged is the only entity
entitled to enforce the Note.  Id., ¶¶ 121, 122.  Because of the pooling arrangement,
Gould has been placed in a position of not knowing if his payments were going to the
actual Note Holder, which amounts to a breach of the contractual obligations under the
Note, and consequently, relieves him of any further obligation under the Note.  Id., ¶¶
123, 124.

Count 8 asserts that in violation of Minn. Stat. § 580.02, defendants have held
themselves out as entities entitled to foreclose on Gould's property, but have failed to
provide proof that they are actually entitled to foreclose on the property, because they
cannot demonstrate an unbroken chain of title and they have failed to record the
assignment, sale or transfer each and every time.  Id., ¶¶ 126-35.

Count 9 claims that in violation of Minn. Stat. § 580.04, Citi Mortgage and
PennyMac intended to conduct a sheriff's sale of the Property and to foreclose on it
despite the fact that the Notice of Foreclosure did not list the names of every assignee
of the mortgage.  Id., ¶¶ 138-43.  Count 17 alleges that because all defendants do not
have the physical possession of the original Note, and do not have clear legal title to the

original Note, they cannot exercise the legal rights of a mortgagee, including the prosecution of a non-judicial foreclosure.  Id., ¶¶ 196-203.  Similarly, Count 18 asserts that because Citi Mortgage and PennyMac do not have clean legal title to the original Note or Mortgage, the publication of the Notice of Foreclosure and the sheriff's sale slandered the title of the Property.[9]  Id., ¶¶ 204-215.

Finally, in Count 19, Gould seeks to bring a claim under Minn. Stat. § 8.31, the Minnesota Private Attorney General Statute, on the basis that because Gould's Mortgage and Note were assigned, conveyed, sold or transferred multiple times and no recordings were made of the Mortgage and Note in the county where the Property was located, as required by Minn. Stat. § 580.02, defendants' failure to record such transactions deprived the county and citizens of Minnesota of thousands of dollars in recording fees authorized by Minn. Stat. §§ 357.18, 508.82, 508A.82.  Id., ¶¶ 204-215.

In sum, all of these claims are premised on defendants' status as the holders in due course of the Note, whether the various alleged assignments were recorded, and the allegation that not one of the defendants have physical possession of the original Note.

Citi Mortgage submitted that these claims are futile as there is no requirement that defendants produce the original Note in order to foreclose, and any argument that they are not holders in due course because they did not take the Note for value, in good faith, or without notice of any defense or claim, is futile because Gould failed to include

---

[9]     Contrary to PennyMac and MERS's assertion, (see PennyMac/MERS Mem., p. 21), a request for attorney's fees in connection with a claim for slander of title, (see Proposed Amended Complaint, ¶ 215), does constitute special damages that are recoverable under such a claim.  See Hayes-Broman v. J.P. Morgan Chase Bank, N.A., 724 F. Supp.2d 1003, 1016 (D. Minn. 2010) ("Attorney fees incurred to remove a cloud on title constitute special damages in a slander of title action.") (citation omitted).

any factual allegation of forgery, irregularity, bad faith or other deficiency.  See Citi Mortgage Mem., pp. 7-9.   Citi Mortgage also asserted that Gould's mortgage securitization and qui tam causes of action fail because there is no requirement under Minnesota law that transfers of indebtedness be recorded in the public records. Id., pp. 10-11, 12.

For their part, PennyMac and MERS contended that the claims are futile because the "show me the note" allegations fail as a matter of law, and the public record shows that there was only one assignment of the mortgage on July 30, 2010, this assignment was recorded on August 18, 2010, and Citi Mortgage, the mortgagee of record initiated a foreclosure proceeding by sending notice of the foreclosure sale on November 18, 2010.  See PennyMac/MERS Mem., pp. 10-13 (citing Second Affidavit of Benjamin E. Gurstelle, Ex. C (Notice of Foreclosure Sale), Ex. D (Assignment of Mortgage)). Further, PennyMac and MERS argued that the holders in due course status is irrelevant to Gould's claims because this status only affects the extent of defenses that can be asserted by an obligor, does not absolve Gould from the loan obligation and is not a prerequisite to foreclosure by advertisement.  Id., p. 14.   In addition, PennyMac and MERS claimed that the fact the mortgage may have been securitized, does not affect the rights available to the mortgagor.  Id., p. 15.  PennyMac and MERS also asserted that Gould lacks standing to challenge the foreclosure by advertisement based on a dispute in title ownership.  Id., p. 16.  As to the slander of title claim, PennyMac and MERS submitted that the claim is futile because Gould's conclusory allegations that defendants lack clear title and that publication of a sheriff's sale was false and malicious, do not meet the specificity requirement for such a claim, and the claim fails to

satisfy the malice requirement by demonstrating that a disparaging statement was made without a good faith belief as to its truth. Id., pp. 20-21. With regards to qui tam claim, PennyMac and MERS argued that the Minnesota Private Attorney General Statute does not allow Gould to sue for violations of Minn. Stat. §§ 357.18, 508.82, 508A.82 because there is no such right to sue under these statutes, Gould has not alleged an action that will render a public benefit, and he is not pursuing an action under these statutes for injuries he sustained. Id., pp. 21-23.

For starters, to the extent that Gould has alleged that defendants needed to show or possess the original Note in order to initiate a foreclosure proceeding, that claim is rejected.[10]   See Hintz v. JP Morgan Chase Bank, NO. CIV. 10-119 (DWF/AJB), 2010 WL 4220486 at *2 (D. Minn. Oct. 20, 2010) ("The foreclosure statutes do not require production of the original note at any point during a foreclosure proceeding.") (citation omitted); see also Smith v. Chase Manhattan Bank, USA, NO. CIV. 10-4341 (DWF/JJG), 2011 WL 1327916 at *2 (D. Minn. April 7, 2011) (same) (citation omitted); Stein v. Chase Home Finance, LLC, NO. CIV. 09-1995 (MJD/JJG), 2010 WL 4736828 at *3, 5 (D. Minn. Aug. 13, 2010) (citations omitted) (after recognizing that courts around the country have rejected the argument that only a holder of the original note can pursue foreclosure, court found there is no requirement that the original note or mortgage be produced at the foreclosure sale), adopted by Chief Judge Michael J. Davis on January 7, 2011 [Docket No. 230].

---

[10]   Despite the allegations throughout the Proposed Amended Complaint that defendants were obligated to possess and "show me the note" in order to foreclose on the Property, at the hearing, Gould's counsel stated that this was not a "show me the note" case. Rather, he maintained that the thrust of all of these "show me the note allegations" was that all assignments and transfers had to be recorded.

Likewise, the Court finds the proposition that all transfers of the underlying indebtedness must be recorded in order to foreclose a mortgage by advertisement, is futile, where the Minnesota Supreme Court has held just the opposite – "transfers of the underlying indebtedness do not have to be recorded to foreclose a mortgage by advertisement under Minn. Stat. §§ 580.02 and 580.04 (2006)." Jackson v. Mortgage Elec. Registration Sys., 770 N.W.2d 487, 489-90 (Minn. 2009).  Based on Jackson, courts in this District have held that the party enforcing the mortgage must be an assignee of the mortgage with a recorded interest but need not have any interest in the promissory note.  See Butler v. Bank of America, N.A., NO. CIV. 11-461 (DWF/TNL), 2011 WL 2728321 at *5 (D. Minn. July 13, 2011) ("The Bank Defendants assert that in Jackson the Minnesota Supreme Court affirmed the law that the party enforcing the mortgage must be an assignee of the mortgage with a recorded interest but need not have any interest in the promissory note. The Court agrees."); see also Kebasso v. BAC Home Loans Servicing, LP, --- F. Supp.2d ----, 2011 WL 2960219 at *6 (D. Minn. July 20, 2011) (citing Jackson, 770 N.W.2d at 489-90) (marks omitted) ("Because a promissory note assignment is an equitable assignment of the security interest that does not affect legal title, only assignment of legal title of the security interest must be recorded to commence foreclosure by advertisement.").

In this case, the public record shows that on July 30, 2010, MERS assigned its interest in the Mortgage, including "all right and interest in the land therein described, and in the note and obligations therein described," to Citi Mortgage, and the Mortgage was recorded on August 18, 2010.  See Gurstelle Second Aff.  Ex. D (Assignment of Mortgage Recorded on August 18, 2010).  That is all that was required for Citi

Mortgage, the mortgagee of record, to initiate a foreclosure proceeding by sending

Notice of Foreclosure Sale on November 18, 2010. Id. Ex. C (Notice of Foreclosure).

Further, all claims that are premised on the assertion that defendants are not

holders in due course of the Note and are not entitled to enforce the Mortgage, are

meritless.

"'[H]older in due course'" means the holder of an instrument if:

> (1) the instrument when issued or negotiated to the holder
> does not bear such apparent evidence of forgery or
> alteration or is not otherwise so irregular or incomplete as to
> call into question its authenticity; and
>
> (2) the holder took the instrument (i) for value, (ii) in good
> faith, (iii) without notice that the instrument is overdue or has
> been dishonored or that there is an uncured default with
> respect to payment of another instrument issued as part of
> the same series, (iv) without notice that the instrument
> contains an unauthorized signature or has been altered, (v)
> without notice of any claim to the instrument described in
> section 336.3-306, and (vi) without notice that any party has
> a defense or claim in recoupment described in section
> 336.3-305(a).

Minn. Stat. § 336.3-302 (a)(1)-(2).

Under Minn. Stat. § 336.3-302, a "bank gives value when money is actually paid."

Menard, Inc. v. King De Son, Co., Ltd., 467 N.W.2d 34, 37 (Minn. Ct. App. 1991) (citing

Trail Leasing, Inc. v. Drovers First American Bank, 447 N.W.2d 190, 191-92 (Minn.

1989)).   In addition, "good faith" refers to the honest belief, with regards to the

transaction concerned, that the holder's conduct was rightful.   See Unbank Co. v.

Dolphin Temporary Help Services, Inc., 485 N.W.2d 332, 333 (Minn. Ct. App. 1992)

(citing Wohlrabe v. Pownell, 307 N.W.2d 478, 483 (Minn. 1981)).

The Mortgage provides that the Mortgagor/Borrower was Gould, the Lender was Citi Mortgage, and the Mortgagee was MERS.  <u>See</u> Gurstelle Second Aff., Ex. B (Mortgage).   The Proposed Amended Complaint sets forth that Gould received $360,000 from Citi Mortgage in exchange for the Note.  Proposed Amended Complaint, ¶¶ 10-13.  On this basis, the Court the finds that Citi Mortgage took the note for value. Second, while Gould alleged in the Proposed Amended Complaint that "none of the Defendants hold Gould's original Note in good faith" and that "none of the Defendants hold Gould's original note without notice of any claims or defenses to the enforcement of the original Note," (Proposed Amended Complaint, ¶¶ 57. 58), when deciding a Rule 12(b)(6) motion this Court is "not required to accept a plaintiff's legal conclusions." <u>Brown v. Medtronic, Inc.</u>, 628 F.3d 451, 459 (8th Cir. 2010) (citing <u>Twombly</u>, 550 U.S. at 556).  The mere recitation of the elements pertaining to a holder in due course does not state a claim for relief.  No facts were alleged to suggest that the Note has been altered or that Gould's signature was a forgery.

Moreover, even if defendants were not the holders in due course of the Note, Gould has no standing to challenge the foreclosure by advertisement process initiated by Citi Mortgage, given that Citi Mortgage is the assignee of the Mortgage having recorded legal title.  <u>See</u> <u>Butler</u>, 2011 WL 2728321 at *6 (finding that because the plaintiffs "do not allege that the foreclosure proceedings were initiated on behalf of an entity other than the mortgagee holding legal title, they have no standing to assert the various claims in the Complaint attempting to challenge the foreclosure by advertisement process.").  <u>Jackson</u> and subsequent cases all establish that whether or not the assignee of the mortgage holds the note is irrelevant to the determination of

whether the mortgage assignee has the right to foreclose the mortgage.  Citi Mortgage is the assignee of Gould's Mortgage and accordingly, is the party that has the legal right to initiate the foreclosure proceedings.

The Court also finds that Gould's proposed claim under the Minnesota Private Attorney General Statute, Minn. Stat. § 8.31, is futile.  First, a statutory cause of action under § 8.31, subd. 3a is limited to persons "'injured by a violation.'"  Buetow v. A.L.S. Enterprises, Inc., 650 F.3d 1178, 1184 (8th Cir. 2011) (quoting Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 13 (Minn. 2001)).  In this case, while Gould did allege harm to the public due to defendants' failure to pay the recording fees, (Proposed Amended Complaint, ¶ 225), fatal to his claim is that he has not alleged a direct harm to himself based on defendants' alleged failure to pay the recording fees to the county.  In addition, the enforcement of Minn. Stat. §§ 357.18, 508.82 and 508A.82, under Minn. Stat. § 8.31, are futile since the Minnesota Private Attorney General Statute provides that "any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages," and subdivision 1 does not reference §§ 357.18, 508.82 or 508A.82, nor do these statutes set forth or even imply a private cause of action.  See Minn. Stat. § 8.31, subds. 1, 3a; Hara v. USAA Cas. Ins. Co., NO. CIV. 10-4224 (PAM/JJK), CIV. 10-3945 (PAM/JJK), CIV. 10-3956 (PAM/JJK), CIV. 10-3944 (PAM/JJK), --- F. Supp.2d ----, 2011 WL 5035995 at *2 (D. Minn. April 12, 2011) ("Subdivision 1 does not reference § 65B.285, nor does it make any reference to any of the sections of Minnesota's insurance laws. No private right of action is available for violations of § 65B.285 under the private attorney general statute.").

For all of the reasons stated above, Gould's motion to amend as it relates to Counts 7, 8, 9, 17, 18 and 19 should be denied as being futile.

**E.**   **Fraud and Misrepresentation Claims: Fraud – Intentional Misrepresentation Against First Rate and Citi Mortgage (Count 10); Fraud – Intentional Misrepresentation Against Citi Mortgage and PennyMac (Count 11); Negligent Misrepresentation Against All Defendants (Count 13); and Constructive Misrepresentation Against All Defendants (Count 14)**

In Count 10, Gould alleged that the following oral and written promises and representations by First Rate and Citi Mortgage to him constituted "fraud – intentional misrepresentation:"

a. Promising Gould that the Note and Mortgage were accurate, proper, containing all material disclosures, and did not violate state or federal law;

b. Representing to Gould only the best case scenario rate of the ARM (rate of 8.375%) and only the corresponding interest only payment ($2,512.50), and not disclosing and representing the proper and material Loan terms, which include that the payment could be as high as $4,314.21 (13.375%);

c. Representing to Gould only the best case scenario of the Loan terms and not disclosing and representing that after the 10-year interest only period Plaintiff's principle and interest payments for the remaining 20 years could be as high as $4,314.21 (13.375%), which is an increase of $1,801.17 per month;

d. Representing to Gould that they placed him in the best loan that he could afford and qualify for;

e. Representing to Gould that Defendants First Rate and Citi Truth-In-Lending Disclosure Statement was an accurate disclosure, however, Defendants First Rate and Citi used the 1-year LIBOR index for the Truth-In-Lending Disclosure Statement from a period earlier then they should have. By doing so Defendants First Rate and Citi showed Gould a lower fully indexed interest rate and lower monthly payment schedule then was reality at the time of closing;

f. Failing to disclose the yield spread premium paid to Defendant First Rate from Defendant Citi;

g.  Representing to Gould that he only was able to qualify for an interest rate of 8.357% when Defendants knew that Gould qualified for a preferable loan. At the time, the Freddie Mac 30 Year Fixed Rate History monthly averages from 2007 showed the average fixed interest rate at 6.57%; nearly 2% lower than what was given and represented to Gould;

h.  Failing to provide Gould with a rate lock agreement which allowed the undisclosed rate to increase to a higher interest rate and resulted in a higher yield spread premium paid to Defendant First Rate;

i.  Representing to Gould that they were putting him in the best situation, however, they purposely chose to put Gould in a much worse situation for their own financial gain, because at the time of the Loan application, Gould's credit score was in the 720-760's, and Gould would have qualified for the average rates on a 30-year fixed rate mortgage;

j.  Representing to Gould that he could qualify for the Loan which was based upon "stated income," even though on August 1, 2007 Minnesota passed Anti-Predatory laws which requires income be verified and not "stated income"; and

k.  Representing to Gould that the Loan was made in his best interest and in good faith instead of made to fit into the product guideline of the investor(s) to which Defendants were going to sell the Loan.

Proposed Amended Complaint, ¶ 149.

Gould asserted the loan was fraudulent because neither of these defendants performed their due diligence by confirming his ability to make the monthly payments over the lifetime of the loan; the use of an interest-only payment provided Gould with an unrealistic payment schedule and induced his reliance based on false information; there were insufficient TILA disclosures; the underwriting of the interest-only loan payments amounted to knowingly selling a mortgage that would fail; and the loan does not comport with Minnesota law. Id., ¶ 153.

In Count 11 for "fraud—intentional misrepresentation" against Citi Mortgage and PennyMac, Gould alleged that these defendants engaged in the following conduct and made the following oral and written representations and promises to him:

a. Selling and securitizing Gould's Mortgage Loan (including the Mortgage and Note) multiple times to Certificate Holders of MBS, in which the claimed holder of the Mortgage obligations and Note have been paid and satisfied in full;

b. Placing Gould's Mortgage Loan into a security, trust, mortgage and/or note pool;

c. Irrevocably selling and/or transferring all of the rights to receive 100 percent of the payments due on Gould's Mortgage Loan to bankruptcy-remote entities and trusts created by PSA, including but not limited to REMIC;

d. Irrevocably separating the "value" of the original Note from the actual, physical original Note and Mortgage;

e. Representing that, despite these actions, Gould's Note and Mortgage are unconditionally enforceable negotiable instruments;

f. Representing that, despite these actions, Defendants have a mortgagee's interest in the Gould's Property;

g. Representing that Defendants possess Gould's original Note, the Mortgage and all interest in the Mortgage Loan;

h. Representing that Defendants have the right, title and interest in Gould's original Note, and that they can exercise rights in the security instrument securing payments in the original Note;

i. Representing that Defendants are authorized representatives acting on behalf of a holder in possession of Gould's original Note and/or Mortgage Loan;

j. Representing that Defendants have valid, clear legal title to Gould's original Note and/or Mortgage Loan, and that they are holders in due course of Gould's original Note and Mortgage Loan;

k. Representing that Defendants paid value for Gould's original Note and Mortgage Loan;

l.   Representing that, despite these actions, they are entitled to foreclose and enforce on these unconditionally enforceable negotiable instruments;

m.   Submitting that Defendants were entitled to foreclose on the Property, despite the above listed violations, and when they have shown no assignment, no agreement, and do not possess (and cannot produce) the original Note that they are foreclosing on;

n.   Representing that Defendants would place Gould's Mortgage into a mortgage modification program and cease all collection and foreclosure proceedings on Gould's Mortgage and his Property;

o.   Representing that Defendants' offer of a Mortgage Loan Modification in or around December 2009 and January 2010, was made in good faith and with authority and meaning;

i. (sic) Representing that if Gould completed and fully and timely made all 6 required payments, Defendants would permanently modify Gould's Mortgage Loan to a fixed $1,488.00 per month, in accordance with their representations and promises; and

j. (sic) Representing that when Defendants withdrew and received all 6 of Gould's required modified Mortgage payments of $1,448.00 they were going to permanently modify Gould Mortgage Loan.

Id., ¶ 162.

According to Gould, Citi Mortgage and PennyMac's representations were false as they knew or should have known that they were not entitled to foreclose on the Property because the Mortgage and Note had been securitized, and they could show no assignment and unbroken chain of title providing them with the authority and right to enforce the Mortgage and Note.   Id., ¶ 164.   In addition, Gould alleged that Citi Mortgage and PennyMac made false representations to him that he could enter into a mortgage modification with a fixed loan if he timely made six mortgage payments and instead, accepted the six payments, and then continued to move forward with the collection and foreclosure of the Property.   Id., ¶ 167.

In Count 13, alleging negligent misrepresentation against all defendants, Gould claimed that they made promises set forth in the factual background of the Proposed Amended Complaint (¶¶ 9-68), as well as those facts alleged in Counts 10 and 11, they failed to exercise reasonable care or competence in obtaining or making these communications, they intended that Gould rely on these representations, and he did rely on these representations.  Id., ¶¶ 178-181.

In Count 14, asserting constructive misrepresentation against all defendants, Gould alleged that defendants had a duty, fiduciary or otherwise, to deal honestly with him, and as set forth in the factual background of the Proposed Amended Complaint (¶¶ 9-68) and in Counts 10 and 11, defendants breached that duty by making "deceptive material misrepresentations" or remained silent when they had a duty to speak, and he relied on these representations to his detriment.  Id., ¶¶ 182-184.

Citi Mortgage argued that the fraud and misrepresentation claims are futile because they are based on assignments of a note or mortgage, which are permitted under Minnesota law, and on the basis that Gould has failed to assert the allegations of fraud and misrepresentation with the necessary particularity required under Rule 9(b) of the Federal Rules of Civil Procedure.  See Citi Mortgage Mem., pp. 11-12.  PennyMac and MERS contended that the fraud-related claims are futile because Gould failed to state the allegations of fraud and misrepresentations with the necessary particularity required by Rule 9(b), failed to allege all of the elements necessary to make out claims for intentional and negligent misrepresentations, and the allegations regarding fraud (as it pertains to promises made to modify his mortgage) are nothing more than a breach of contract claim.  See PennyMac/MERS Mem., pp. 9-13, 17-20.  PennyMac and MERS

also maintained that lumping all defendants together in some sort of undefined fraud is improper under Rule 9(b) and is grounds for dismissal.  Id., p. 10 (citing Moua v. Jani-King of Minn., 613 F. Supp. 2d 1103 (D. Minn. 2009)).

Pursuant to Rule 9(b), "the circumstances constituting fraud . . . shall be stated with particularity."  In order to meet the particularity requirements of Rule 9(b), a plaintiff must:

> plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. In other words, the party must typically identify the "who, what, where, when, and how" of the alleged fraud. This requirement is designed to enable defendants to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct. The level of particularity required depends on, inter alia, the nature of the case and the relationship between the parties. Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. Rule 9(b) should be read "in harmony with the principles of notice pleading.

BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (internal marks and citations omitted). "Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation, is considered an allegation of fraud which must be pled with particularity." Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010) (citing Juster Steel v. Carlson Co., 366 N.W.2d 616, 618 (Minn. Ct. App. 1985)).  As such, the Rule 9(b) particularity requirement applies to intentional, negligent and constructive misrepresentation claims.

In addition, a complaint fails to state a claim for relief when it fails to provide fair notice of the grounds for the claims made against a particular defendant by lumping all defendants together and not sufficiently alleging who did what to whom.  Tully v. Bank

of America, N.A., Civil No. 10–4734 (DWF/JSM), 2011 WL 1882665 at *6 (D. Minn. May 17, 2011) (citing Liggens v. Morris, 749 F. Supp. 967, 971 (D. Minn. 1990) ("Plaintiffs assert each of the causes of action against the Defendants generally, but do not otherwise specify which claims are asserted against any particular defendant, or which specific claims each Plaintiff is asserting. Thus, the Bank Defendants, and the Court, are left to guess which Plaintiffs are asserting which claims against which Defendants. The Court concludes that such pleading is inadequate and that Rule 8 requires greater specificity than that found in Plaintiffs' Amended Complaint.").

In this case, Gould's fraud and misrepresentation claims do not meet Rule 9(b)'s particularity requirements because Gould failed to specify which defendant, as well as which employee of defendants, made the pertinent misrepresentation or omissions, and also failed to set forth when and where the misrepresentation took place. See Moua, 613 F. Supp. 2d at 1111 ("Plaintiffs' fraud claims fail to satisfy Rule 9(b) because the allegations cluster all the Defendants together without the required specificity to discern the respective roles of the individual defendants in the alleged fraud scheme."). In addition, the allegations of the "how" of the misrepresentations (or lack thereof) by defendants are impermissibly general. In short, the Proposed Amended Complaint gives neither the Court nor Citi Mortgage, PennyMac or MERS any idea as to what was said to Gould, when it was said or who said it. Further, Gould has not even met the notice pleading requirements of Rule 8(a), as he has lumped all defendants together and has not sufficiently alleged which defendant made the alleged misrepresentations.

For all of the reasons stated above, the motion to amend as it relates to Counts 10, 11, 13 and 14 should be denied.

F.   **Breach of Fiduciary Duty Against First Rate and Citi Mortgage (Count 12)**[11]

Gould alleged that First Rate and Citi Mortgage, as the lenders in this case, had a fiduciary responsibility to perform their due diligence before extending credit to him as the borrower, but failed to confirm his ability to make the necessary monthly payments over the lifetime of the loan.   See Proposed Amended Complaint, ¶ 172.   Gould maintained that these defendants breached their fiduciary duty to him by failing to notify him that he would or had a likelihood of defaulting on the loan and had a duty not to place him in the loan.  Id., ¶¶ 173, 174.   Gould also alleged that First Rate and Citi Mortgage breached their fiduciary duty by placing him in a loan that maximized their profits with no concern for him; by failing to provide material disclosures regarding the loan, including the repayment terms, the interest rate and an accurate debt to income ratio; and by failing to fully comply with state regulations and laws.  Id., ¶¶ 174-177.

Citi Mortgage argued that this cause of aciton is futile because mere extension of a mortgage to a consumer it is not enough to create a fiduciary duty and Gould has failed to allege that it met any of the requirements in Minn. Stat. § 58.61, subd. 1.  See Citi Mortgage Mem., p. 17-18.

A customer relationship with a bank, alone, is not enough to establish a fiduciary relationship.  See Vacinek v. First Nat. Bank of Pine City, 416 N.W.2d 795, 800 (Minn. Ct. App. 1987) (citation omitted).  By way of extension, "under Minnesota law, a lender does not owe a fiduciary duty to a borrower."  Wittkowski v. PNC Mortg., NO. CIV. 11-

[11]   The only modification to this claim from the original Complaint is that Gould replaced the reference to TILA and RESPA with state regulations and laws.  Compare Complaint, ¶ 73 with Proposed Amended Complaint, ¶ 177.  In light of that modification, the Court has addressed the proposed change here.

1602 (MJD/JJG), 2011 WL 5838517 at *5 (D. Minn. Nov. 18, 2011) (citation omitted); see also Ming'ate v. Bank of America, N.A., NO. CIV. 11-1787 (ADM/TNL), 2011 WL 4590431 at *5 (D. Minn. Sept. 30, 2011) (finding "that In Minnesota, lenders bear no fiduciary duty to borrowers" and that that "'when a bank transacts business with a depositor or other customer, it has no special duty to counsel the customer.'") (quoting Klein v. First Edina Nat. Bank, 196 N.W.2d 619, 623 (Minn. 1972)).

Further, to the extent that Gould is asserting that Citi Mortgage had a fiduciary duty because it was acting as a mortgage originator under Minn. Stat. § 58.16, the such a claim is also futile.  This statute provides:

> Residential mortgage originators who solicit or receive an advance fee in exchange for assisting a borrower located in this state in obtaining a loan secured by a lien on residential real estate, or who offer to act as an agent of the borrower located in this state in obtaining a loan secured by a lien on residential real estate shall be considered to have created a fiduciary relationship with the borrower and shall comply with the requirements of subdivisions 2 to 7. This section does not apply to mortgage brokers who do not solicit or receive an advance fee.

Minn. Stat. § 58.61, subd. 1.  Gould has not alleged that Citi Mortgage received a fee in assisting him in obtaining a loan.  See Weller, 2009 WL 928522 at *9 (finding that breach for fiduciary duty claim failed to state a claim for relief for failing to allege the necessary conditions under Minn. Stat. § 58.61, subd. 1).

For all of the reasons stated above, Gould's motion to amend to assert a breach of fiduciary claim against Citi Mortgage should be denied as futile.  The claim does not apply to MERS or PennyMac.

### G.    Civil Conspiracy Claim Against All Defendants (Count 15)

Count 15 of the Proposed Amended Complaint for civil conspiracy against all defendants alleged that in connection with the application for and consummation of the mortgage loan, they agreed between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means in furtherance of the conspiracy.  See Proposed Amended Complaint, ¶ 187.   In particular, Gould asserted that defendants agreed between and among themselves, to engage in a conspiracy to defraud him for the purpose of accruing economic gains for themselves to his detriment.  Id., ¶ 188.

Citi Mortgage argued that Gould has failed to state claim for civil conspiracy because the Proposed Amended Complaint fails to state a viable claim for fraud upon which the conspiracy claim is based.  See Citi Mortgage Mem., pp. 18-19.  PennyMac and MERS maintained that the conspiracy claim fails because they were not involved with the origination of the loan.  See PennyMac/MERS Mem., pp. 8-9.

There is no civil action for conspiracy under Minnesota law without an underlying tort.  See D.A.B. v. Brown, 570 N .W.2d 168, 172 (Minn. Ct. App. 1997) (citing Harding v. Ohio Cas. Ins. Co., 41 N.W.2d 818, 824 (Minn. 1950)).  "A civil conspiracy claim is merely a vehicle for asserting vicarious or joint and several liability, and hence such a 'claim' is dependent upon a valid underlying tort claim."  Carlson v. A.L.S. Enters., Inc., Civ. No. 07-3970 (RHK/JSM), 2008 WL 185710 at *5 (D. Minn. Jan. 18, 2008) (internal marks omitted).  Because this Court has found that Gould's underlying proposed torts for fraud and misrepresentation are futile, he cannot proceed with the conspiracy claim. In addition, even if Gould could cure this defect as to Citi Mortgage, the claim fails

against PennyMac and MERS as Gould has alleged no facts to suggest that they were involved in the origination of the loan.

For all of these reasons, the Court finds that the motion to amend as it relates to the civil conspiracy claim should be denied.

### H.     Claims for Injunctive and Declaratory Relief (Counts 1 and 2)

Gould has sought injunctive and declaratory Relief against Citi Mortgage, MERS and PennyMac.  See Proposed Amended Complaint, ¶¶ 69-78.

"Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted."  Ryan v. Hennepin Cnty., 29 N.W.2d 385, 387 (Minn. 1947) (citation and marks omitted).   Likewise, "'[a] successful action for declaratory judgment requires a viable underlying cause of action.'"  Spine Imaging MRI, L.L.C. v. Liberty Mut. Ins. Co.,--- F. Supp.2d ----, 2011 WL 3678650 at *9 (D. Minn. Aug. 22, 2011) (quoting Essling's Homes Plus, Inc., v. City of St. Paul, 356 F. Supp.2d 971, 984 (D. Minn. 2004)).

The Court has found all of Gould's proposed claims against Citi Mortgage, PennyMac and MERS are futile.  Consequently, the Court the motion to amend as to Counts 1 and 2 for injunctive and declaratory relief should be denied as to these defendants.

### I.     Amended Claims as to First Rate and Closers Finalis

Gould's counsel represented at the hearing that he has not yet served First Rate and Closers Finalis with the Complaint.  Under Rule 15(a)(1), a party has the right to amend its complaint once as a matter of course within 21 days of serving the pleading. See Fed. R. Civ. P. 15 (a)(1)(A).  While Gould did accomplish service on Citi Mortgage,

PennyMac and MERS, since he has not served the Complaint on defendants First Rate and Closers Finalis, he has the right to amend its Complaint once as to these defendants.  Such an amendment could have been asserted without bringing a motion to the Court.  See Williams v. Savage, 569 F. Supp.2d 99, 104 (D.D.C. 2008) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. 2d § 1481) ("If there is more than one defendant, and not all have served responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer.").  As such, the motion to amend should be granted with regards to claims that Gould has alleged against First Rate and Closers Finalis: Counts 1, 2, 3, 4, 5 (as to First Rate),[12] 6, 7 (as to First Rate), 8, 9, 11, 12 (as to First Rate), 14 (as to First Rate), 15, 16, 17, 18, 19, 21, and 22.[13]

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

---

[12]   While the proposed amended complaint mentions Citi Mortgage in Count 5, the Count is captioned against First Rate and Gould's memorandum provides that Count 5 applies only to First Rate.  See Plaintiff's Motion for Leave to Amend the Complaint [Docket No. 20], p. 5.  As such, the Court interprets this claim, as well as the paragraph 192 of the unjust enrichment claim pertaining to the payment of yield spread premium, as only applying to First Rate.

[13]   This Court acknowledges that given that there are no federal claims remaining as a part of the Proposed Amended Complaint, the Court could decline to exercise supplemental jurisdiction over the state law claims alleged against First Rate and Closers Finalis.  See 28 U.S.C. § 1367(c)(3); McLain v. Andersen Corp., 567 F.3d 956, 965 (8th Cir. 2009) ("[P]ursuant to 28 U.S.C. § 1367, courts have the discretion to exercise supplemental jurisdiction over remaining state-law claims even after the district court has dismissed all claims over which it has original jurisdiction.") (citation and internal marks omitted).  However, the Court believes that the proper time to take up that issue is after Judge Frank addresses the motions to dismiss filed by Citi Mortgage, PennyMac and MERS on the state claims asserted against them in the original Complaint.  Once he renders that decision, he will be in the best position to determine whether the Court should exercise supplemental jurisdiction over any surviving state claims.

Plaintiff's Motion for Leave to Amend Complaint [Docket No. 18] be **GRANTED** in part and **DENIED** in part as follows:

      a.      Plaintiff's Motion for Leave to Amend as to the following Counts in the Proposed Amended First Complaint against defendants First Rate Financial, Inc. and Closers Finalis, Inc. be **GRANTED**: as to Counts 1, 2, 3, 4, 5 (as to First Rate), 6, 7 (as to First Rate), 8, 9, 11, 12 (as to First Rate), 14 (as to First Rate), 15, 16, 17, 18, 19, 21, and 22.

      b.      Plaintiff's Motion for Leave to Amend as it relates to withdrawing his Violation of the Truth in Lending Act and Real Estate Settlement Procedures Act, Unfair Businesses Practice claim and the Predatory Lending claim as set forth in the original Complaint as to all defendants be **GRANTED**.

      c.      Plaintiff's Motion for Leave to Amend as it relates to proposed remaining amended claims against defendants Citi Mortgage, Inc., Mortgage Electronic Registration Systems, Inc., and PennyMac Loan Services, LLC be **DENIED**.

Dated:      December 29, 2011

                            *s/ Janie S. Mayeron*
                            JANIE S. MAYERON
                            United States Magistrate Judge

## NOTICE

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 12, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **January 12, 2012**.